IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID ALAN BLAIR | : | |
| | : | |
| Plaintiff | : | |
| v. | : | Civil Action No.: 1:23-cv-01574-JEB |
| | : | |
| DISTRICT OF COLUMBIA, *et al.* | : | |
| Defendants | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## FIRST AMENDED COMPLAINT

David Alan Blair, Plaintiff, by and through his undersigned counsel, pursuant to Rule 15(a)(1)(B), amends the complaint.

## JURISDICTION AND VENUE

1. This court has jurisdiction over the subject matter and persons of this action pursuant to the D. C. Code Sec. 11-921.

## PARTIES

2. Plaintiff is a citizen of the United States of America and a resident of the State of Maryland.

3. The defendant District of Columbia is a body corporate and politic. The individual defendants are sworn police officers who are members of the Metropolitan Police Department of the District of Columbia.

## ALLEGATIONS COMMON TO ALL COUNTS

4. On January 6, 2021, Plaintiff, age 26, left his home in Clarksburg, Maryland at around 3-3:15 p.m., and drove to Washington, D.C.  His intention was to come to the Nation's Capital to exercise his First Amendment rights of speech and assembly.  He was unaware that the Capitol Building had been breached earlier on that day.  His drive took an hour or so.  He parked

his car in a parking lot on L Street, N.W., and walked toward the Capitol. The walk took about an hour and 20 minutes. As he approached the West Lawn of the Capitol, he saw a speaker addressing some people at the Peace Monument on First Street, N.W. He listened briefly and then walked onto the West Lawn of the Capitol where he saw protestors gathered.

5. Plaintiff arrived at the West Lawn about 10 minutes before the events that give rise to this lawsuit. He did not see or cross any signs or barriers that should have led him to believe that he could not go on the West Lawn.

6. At some point near the Plaintiff's arrival, the Metropolitan Police Department's Civil Defense Units formed a line and began to move across the West Lawn to move protestors off the lawn. These units were under the supervision of Lt. Justin Roth and Sgt. Fabian Ferrera. Both were present and at all times herein directly supervised the CDU unit officers, who included the Defendant officers Kevin Peralta, Claudy Toussaint, Aaron Smith, and Keenan Thomas-Bartley. The CDU unit officers were heavily clad in riot gear and armed with metal batons. As the line moved, the officers chanted "Move back" and extended their batons in a push-and-pull fashion. Plaintiff did not understand why the officers were moving people off of the West Lawn, and he did not know that there were restrictions in place on the West Lawn, for the reason that signage and/or barriers were absent by the time of Plaintiff's arrival. No dispersal orders had been issued or were called for, as there were not a significant number of people on the West Lawn who were failing to adhere to imposed time, place, and manner restrictions. Defendants Lt. Justin and Sgt. Ferrera were aware that no such orders were given, and they personally did not give dispersal orders, or direct others to do so. The First Amendment Assemblies Act of 2004, §5-331.01, *et seq.*, commands that protestors be given multiple dispersal orders from multiple locations, unless there is an imminent danger of personal injury or significant damage. There was no such danger

on the West Lawn at that time due to the fact that a significant number of persons had departed from the area. In any event, there was no audible amplified announcement given to persons on the West Lawn where Plaintiff was, and there was no notice given informing persons that it was no longer lawful to assemble there, or that they would be arrested if they did not leave. Nor was there an announcement telling people where to go or the routes they were to use.

7. As the line approached, Plaintiff was in disbelief that protestors were being required to move off the West Lawn. He moved back initially when the line approached. But then he decided that he should stay where he was since he thought he had a right to be there and to exercise his First Amendment rights of speech and assembly. At that point, he was close to two large trees on the West Lawn, approximately 100 ft. from Peace Circle on First Street, N.W. This was at least 700 feet from the Capitol. Plaintiff began to parade with a confederate flag which he had attached to a lightweight aluminum lacrosse stick, and he encouraged others not to move back further, which would then have put them on First Street, which was nearby.

8. As the police line moved closer, Officer Kevin Peralta, who weighed 220 lbs., shoved Plaintiff hard. Plaintiff was about 60 lbs. lighter than the officer, lost his balance but remained on his feet. He had turned in the direction of the people who were behind him when he was shoved, and it jarred him.

9. Prior to this action on the part of Officer Peralta, neither he nor the other Defendant police officers sought voluntary compliance with the protestors by attempts to defuse the situation through advice, warning, verbal persuasion, tactical communication, or other de-escalation techniques. This was contrary to the District of Columbia Code, the First Amendment Assemblies Act, §5-331.07(b)(1), and the Metropolitan Police Department Standard Operating Procedures for handling First Amendment Assemblies in regard to the Civil Disturbance Unit's Use of Force.

D.(2)(a).  Any persons who did not move or move quickly enough were shoved hard by the officers.  Some protestors were knocked off their feet.  The officers did not attempt to issue a citation or arrest the Plaintiff.

10. The shove by Officer Peralta provoked the Plaintiff who uttered a few expletives at the officer.  Plaintiff then pushed Officer Peralta with his lacrosse stick.  He moved the stick in a motion parallel to the ground toward the officer's torso.  Heavily clad in a protective riot suit, the contact did not harm the officer or inflict an injury.  Yet Officer Peralta immediately responded with deadly force, swinging the baton overhand with all of his strength at the Plaintiff's head and striking his skull.  The blow staggered the Plaintiff, who lost consciousness for a brief moment.  Officer Peralta continued to swing for the head and struck Plaintiff two more times in the head.  He also struck Plaintiff twice more on other parts of his body.

11. Strikes to the head with a baton are prohibited by the Metropolitan Police Department's Standard Operating Procedures and are universally prohibited because it is considered to be the use of deadly force.  None of the other named defendant police officers intervened to stop Officer Peralta's flagrantly illegal baton strikes.  And none of the officers, including the supervisors who are named as defendants, reported Officer Peralta's baton strikes to the head.  Defendant Officer Aaron Smith falsely reported that no officer struck Plaintiff in the head.

12. Rather than intervene and stop the use of deadly force, the officers in the immediate area joined in the fray and struck the Plaintiff multiple times with batons.  The Plaintiff was not trying to hit the officers.  Instead, all he could hope to do at that point was to try to defend himself as the officers continued to strike him without letup.

13. Together the officers struck the Plaintiff twelve (12) times with batons. Officer Toussaint delivered eight (8) baton strikes to the Plaintiff's arms, torso, and legs. Officer Kenan Thomas-Bartley struck Plaintiff twice in the stomach with a baton. And Officer Aaron Smith delivered two (2) strikes to the Plaintiff's legs.

14. After the officers stopped hitting him, Plaintiff was handcuffed without resistance and officers escorted him into the Capitol for processing. The time of the Plaintiff's arrest was noted on police records as 5:47 p.m.

15. The Plaintiff was actively bleeding from two large head lacerations caused by Officer Peralta's baton strikes to the head. He was transported by ambulance from the Capitol to George Washington University Hospital at 8:00 p.m. on January 6, 2021. An emergency room doctor who examined the Plaintiff found that Plaintiff had a ten (10) cm. superficial laceration to the center of the scalp and a six (6) cm. "complicated laceration" to the left frontotemporal area. Nine (9) staples were used to close the central laceration and seven (7) sutures were used to close the left wound. Plaintiff was diagnosed with a concussion as well and was cautioned appropriately to seek follow-up care.

16. Upon release from police custody on January 7th, Plaintiff suffered from severe headaches, nausea and vomiting, difficulties with speech and short-term memory, and other sequelae of post-concussive symptoms.

17. The Plaintiff suffered significant physical and mental pain and suffering due to his injuries. He sustained disfiguring scars from the lacerations to his head. He lost time from employment resulting in a loss of income and earnings. He incurred substantial expenses for medical care and treatment of his physical injuries.

18. The actions of the officers were committed within the scope of their employment with the Metropolitan Police Department and under the color of the law.

19. On June 2, 2021, Plaintiff submitted a written claim letter to the District of Columbia, giving notice of his claim for injuries sustained on January 6, 2021.

**Count One -- § 1983 Violation of Constitutional Rights**

20. The actions of Officers Peralta, Toussaint, Smith, and Thomas-Barley constituted the use of excessive, unnecessary, and unreasonable force, and in the case of Officer Peralta's baton strikes to the head, constituted unjustified deadly force.

21. The actions of defendants Lt. Roth and Sgt. Ferrera by failing to issue appropriate warnings by means of bullhorns or other sound systems to the assembly of persons on the West Lawn, in failing to properly supervise the officers under them in the Civil Disturbance Unit, including failing to timely intervene and stop the unauthorized use of force committed by other officers, directly led to the injuries sustained by Plaintiff. In addition, their failure to report the clearly unauthorized use of force amounted to the ratification of such force and renders these officers liable to Plaintiff.

22. The use of force by the officers violated Plaintiff's rights under the Fourth Amendment to the United States Constitution and resulted in injuries to the Plaintiff as previously alleged. Plaintiff was also exercising his First Amendment right of freedom of assembly, petition the government, and speech, and those rights were abridged as well.

**Count Two – Assault/Battery**

23. The actions of Officers Peralta, Toussaint, Smith, and Thomas-Barley constituted an assault and/or battery under the laws of the District of Columbia.

24. As previously alleged, the actions of these officers were committed within the scope of their employment with the District of Columbia who is liable for their actions.

**Count Three – Negligence in Training and Supervision**

25. The defendant District of Columbia negligently failed to train and supervise the members of the Civil Disturbance Unit to adhere to the officer's responsibilities under the District of Columbia Rights and Police Standards Act of 2004 ("the Act"). §5-331.07 (e)(1) provides:

> If and when the MPD determines that a First Amendment assembly, or part thereof, should be dispersed, the MPD shall issue at least one clearly audible and understandable order to disperse using an amplification system or device, and shall provide the participants a reasonable and adequate time to disperse and a clear and safe route of dispersal." Subsection (2) that the "*MPD shall issue multiple dispersal orders and, if appropriate, shall issue the orders from multiple locations*." The orders shall inform persons of the routes by which they may disperse and shall state that refusal to disperse will subject to the arrest. (Emphasis added.)

Subsection (b)(1) of the same section of the Act, states:

> Where participants in a First Amendment assembly fail to comply with reasonable time, place, and manner restrictions, the MPD shall, to the extent reasonably possible, first seek to enforce the restrictions through voluntary compliance and then seek, as appropriate, to enforce the restrictions by issuing citations to, or by arresting, the non-specific non-compliant persons, where probable cause to issue a citation or arrest is present.

26. The District of Columbia's failure to ensure proper training and supervision with respect to these statutory requirements would have prevented the unlawful use of force which occurred here against Plaintiff. The Defendant police officers that they were not properly trained or insufficiently trained in handling First Amendment assemblies and the use of force. In particular, Officer Peralta was not trained or insufficiently trained against strikes to the head with a baton. These deficiencies were glaring given the officers' over-reaction and resort to unwarranted higher levels of force against protestors, including the Plaintiff, and the fact that

Officer Peralta felt not the slightest need to refrain from striking the Plaintiff in the head, not once, but three times.

### Ad Damnum Clause

a. To award compensatory damages in the amount of $750,000 to Plaintiff against defendants, jointly and severally;

b. To award the Plaintiff reasonable attorney's fees under 42 U.S. C. § 1988;

c. Award such other relief as this Court deems appropriate.

Respectfully submitted,
**ROBERTS AND WOOD**

  /s/ *Terrell N. Roberts, III*
Terrell N. Roberts, III
Bar ID No. 965061
*Attorney for Plaintiff*
6801 Kenilworth Avenue, Suite 202
Riverdale, Maryland 20737
(301) 699-0764
(301) 699-8706 Fax
troberts@robertsandwood.com

### DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by an eight-person jury.

  /s/ *Terrell N. Roberts, III*
Terrell N. Roberts, III

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a copy of the foregoing First Amended Complaint was electronically filed on July 20, 2023, via the CM/ECF File & Serve system, and an electronic copy was e-served on:

Michael K. Addo
Chief, Civil Litigation Division Section IV

David A. Jackson
Senior Assistant Attorney General
Office of the Attorney General
400 6th Street, N.W.
Washington, D.C. 20001

        /s/ *Terrell N. Roberts, III*
        Terrell N. Roberts, III