**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

DAVID ALAN BLAIR,

     *Plaintiff,*

    v.

DISTRICT OF COLUMBIA, *et al.*,

     *Defendants.*

---

Civil Action No. 23-01574 (AHA)

### Memorandum Opinion

David Alan Blair sues the District of Columbia and two of its police officers, Kevin Peralta and Aaron Smith, alleging they used excessive force against him during the January 6, 2021, attack on the U.S. Capitol, after he hit one of the officers with a lacrosse stick. The parties cross-move for summary judgment. The court concludes that, accepting Blair's evidence as true, the officers used excessive force against Blair, but the law requires the court to grant them qualified immunity. The court declines to exercise supplemental jurisdiction over Blair's remaining D.C. law claims and remands to the D.C. Superior Court for further proceedings.

## I.    Background

What happened on January 6, 2021, has been well documented by the judges of this court and our circuit: As Congress convened to certify the 2020 presidential election results, President Trump claimed to supporters at a rally he organized that the election was "rigged" and "stolen." *Trump v. Thompson*, 20 F.4th 10, 18 (D.C. Cir. 2021). "Toward the end of the speech, President Trump announced to his supporters that 'we're going to walk down Pennsylvania Avenue to the Capitol and we're going to try and give our Republicans the kind of pride and boldness that they

need to take back our country.'" *Id.* (cleaned up). He then urged the crowd to "demand that Congress do the right thing" and declared "we fight like hell and if you don't fight like hell, you're not going to have a country anymore." *Id.* (cleaned up).

After the speech, a mob, including some people who were armed, "marched to the Capitol and violently broke into the building to try and prevent Congress's certification of the election results." *Id.* The riot "marked the most significant assault on the Capitol since the War of 1812." *Id.* at 18–19. The mob "overwhelmed law enforcement," and officers were "attacked with chemical agents, beaten with flag poles and frozen water bottles, and crushed between doors and throngs of rioters." *Id.* at 18. Law enforcement helped members of Congress and the Vice President evacuate from the Capitol, as rioters breached the Senate chamber and officers barricaded the door to the House chamber to hold rioters off. *Id.* Police "were not able to regain control of the building and establish a security perimeter for hours." *Id.* Several individuals died, and nearly 140 officers were injured. *Id.* at 19.[1]

Viewing the evidence in Blair's favor, Blair expected a protest to occur in D.C. on January 6, 2021, based on social media posts he saw in December 2020. ECF No. 37-2 at 8–11. He became

---

[1]   The parties dispute whether the court should take judicial notice of these well-documented facts. The defendants included such facts in their statement of undisputed facts, quoting from the D.C. Circuit. *See* ECF No. 37 at 3–5; ECF No. 37-1 ¶¶ 1–16. Blair's statement of facts in dispute does not rebut the defendants' recounting. *See* ECF No. 38-1. Blair instead says, "[o]ne can accept that January 6th was unique," and focuses on Blair's encounter with the defendant officers. ECF No. 38 at 2; *see* ECF No. 38-1. On this record, the court sees no basis to disregard the events that occurred on January 6, 2021, or to prevent the defendants from relying on facts recounted by our circuit. The court accepts those facts as admitted, consistent with Blair's failure to offer any competing version, while also viewing all the evidence in the light most favorable to Blair. *See* Local Civ. R. 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

interested in attending the event over the ensuing weeks. *See id*. at 18–19. On January 6, he saw videos of what was happening at the Capitol and decided to join. ECF No. 37-1 ¶ 27; ECF No. 37-2 at 21–22. According to Blair, he intended to go to the West Lawn of the Capitol to protest. ECF No. 38-1 ¶ 2. He left home with "a lacrosse stick to use as a flagpole for a confederate flag," expecting "to fight Antifa." ECF No. 37-1 ¶¶ 26, 32; *see* ECF No. 38-1 ¶ 7; ECF No. 37-2 at 23–25; ECF No. 38-6 at 8–9. He also brought a knife with him because he "wasn't about to get jumped." ECF No. 37-2 at 26; ECF No. 37-1 ¶¶ 33–34.

When Blair arrived, he went to the West Lawn of the Capitol, where police officers, including some in riot gear, were in the process of moving a crowd off the lawn. ECF No. 38-1 ¶¶ 2–4; ECF No. 37-1 ¶ 38. By that time, many individuals had left the Capitol grounds. ECF No. 38-1 ¶ 3. Blair joined the crowd that remained on the West Lawn, thinking there was an active protest. *Id.* ¶ 5.

In multiple videos, Blair can be seen positioning himself between the retreating crowd and the line of officers, striding back and forth and shouting aggressively for the crowd to disobey the officers and "quit backing up." Def. Ex. 4 at 17:47:03–17:47:20; Pl. Ex. 12(a) at 6:25–6:42; ECF No. 37-1 ¶¶ 44, 46–47; ECF No. 38-1 ¶ 5. When the line of officers, chanting "move back," reached Blair, Officer Peralta held his riot baton horizontally and shoved Blair from behind in the direction of the retreating crowd. Def. Ex. 4 at 17:47:18–17:47:21; *see* ECF No. 37-1 ¶ 48; ECF No. 38-1 ¶ 6. Blair turned around, said "What's up motherfucker? What's up? What's up, bitch, huh? What's up? What's up?" and then cross-checked Officer Peralta in the torso with his lacrosse stick. Def. Ex. 4 at 17:47:21–17:47:26; *see* ECF No. 37-1 ¶¶ 49–50; ECF No. 38-1 ¶ 7. After Blair hit Officer Peralta, an officer attempted to grab the lacrosse stick from Blair's hands, and Blair did not let go of it. Def. Ex. 4 at 17:47:26–17:47:28. The videos from this point show a degree of

chaos, as officers tried to subdue Blair and keep control of members of the crowd, but accepting the facts in the light most favorable to Blair, the evidence shows that Officer Peralta hit Blair multiple times with his riot baton during the encounter, including in the head. Def. Ex. 4 at 17:47:29–17:47:40; Pl. Ex. 12(a) at 6:48–6:59; ECF No. 37-1 ¶¶ 51–53; ECF No. 38-1 ¶¶ 8–9. After Blair was taken to the ground, Officer Smith used his baton to hit Blair several times in the legs. Pl. Ex. 9 at 17:47:36–17:47:42; ECF No. 38-1 ¶ 17; ECF No. 37-1 ¶¶ 55–57. Officers then arrested Blair, and he was charged with several crimes, including assault of an officer. ECF No. 37-1 ¶ 62. Blair pled guilty to obstruction of law enforcement during a civil disorder, and his other charges were dismissed. *Id.* ¶¶ 63–64.

Blair sued the District, Officer Peralta, and Officer Smith in D.C. Superior Court, and the defendants removed the case to this court. ECF No. 1. Blair asserts a federal claim against the defendant officers for excessive force in violation of his Fourth Amendment rights, under 42 U.S.C. § 1983. ECF No. 11 ¶¶ 20–22. He also asserts D.C. law claims against the defendant officers for assault and battery and against the District for negligent training and supervision. *Id.* ¶¶ 23–26. The defendants move for summary judgment on all the claims against them, and Blair cross-moves for summary judgment on his excessive force claim against Officer Peralta. ECF No. 37; ECF No. 39.[2]

## II.    Discussion

The court grants summary judgment to the moving party when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making that determination, the court "must draw all reasonable inferences in favor of the

---

[2]    The amended complaint also asserted claims against other officers, but the parties stipulated to dismissal of those claims. ECF No. 35.

4

nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Viewing the evidence in the light most favorable to Blair, he has not raised a genuine and material factual issue affecting whether the defendant officers are entitled to qualified immunity. Because the officers are entitled to qualified immunity, they are entitled to judgment as a matter of law.

The Supreme Court created—and has since adhered to a stringent defense of—qualified immunity, which shields government officials from civil liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (citation omitted). To defeat qualified immunity, a plaintiff must show not only that a government official violated one of his rights, but also that the official violated a clearly established right. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas*, 595 U.S. at 5 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). Qualified immunity thus "protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix*, 577 U.S. at 12 (cleaned up).

Here, Blair has raised a triable issue as to whether Officer Peralta used excessive force. "A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard." *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014).

5

Whether force is excessive therefore turns on "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Although it is difficult to parse the video footage given the disorder, viewing the evidence in Blair's favor, Officer Peralta hit Blair multiple times in the head with a riot baton. Officer Peralta acknowledges that this was deadly force. ECF No. 38-1 ¶ 8; ECF No. 38-4 at 60–61. And an internal investigation found Officer Peralta's force was "not justified under the Department's policy" because "Blair's behavior did not constitute an immediate threat of death or serious bodily injury to Officer Peralta or any other officer." ECF No. 38-1 ¶ 16. While Blair was, by all accounts, an agitator acting aggressively toward officers, including cross-checking Peralta with his lacrosse stick, a reasonable jury could nonetheless conclude it was objectively unreasonable for Peralta to respond the way he did. *See Tennessee v. Garner*, 471 U.S. 1, 9 (1985) (noting that the "intrusiveness of a seizure by means of deadly force is unmatched"); *Johnson v. District of Columbia*, No. 22-cv-3167, 2025 WL 2996189, at *5 (D.D.C. Oct. 24, 2025) (concluding deadly force was not justified even where the plaintiff "was actively struggling with the officers" and noting the struggle itself "tells us little about whether he posed a serious and immediate threat").

A reasonable jury could similarly find that Officer Smith acted unreasonably by hitting Blair in the leg with his baton, considering all the circumstances. Although it is, again, difficult to parse the video footage because of the chaos, viewing the evidence in Blair's favor, Smith hit Blair twice in the leg after he was on the ground. ECF No. 38-1 ¶ 17; ECF No. 37-1 ¶¶ 55–57. On these

6

facts, a jury could conclude, as MPD's investigation did, that Officer Smith's use of force was not justified. ECF No. 38-1 ¶ 17.[3]

But Blair has not raised a genuine and material factual issue that would affect the officers' entitlement to qualified immunity under Supreme Court precedent. To defeat qualified immunity, the unlawfulness of the officers' conduct must be "clearly established," meaning that "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12 (citation omitted); *see District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (stating that, to be clearly established, "existing law must have placed the constitutionality of the officer's conduct beyond debate" (cleaned up)). Blair thus must "identify a case where an officer acting under similar circumstances as [the defendant officers] was held to have violated the Fourth Amendment." *White v. Pauly*, 580 U.S. 73, 79 (2017); *see Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015) ("It is [the plaintiffs'] burden to show that the particular right in question—narrowly described to fit the factual pattern confronting the officers—was clearly established." (citation omitted)); *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) ("[O]fficers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue."). The Supreme Court has instructed that this analysis "must be undertaken in light of the specific context of the case" and that "specificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Rivas-Villegas*, 595 U.S. at 5–6 (cleaned up).

---

[3]   To be sure, a jury may be more likely to view the evidence, including the circumstances of January 6, law enforcement's legitimate and important interest in securing the Capitol, Blair's aggressive behavior, and the chaos ensuing, and conclude that the defendant officers' force was objectively reasonable under all the circumstances.

Blair does not identify any case establishing a constitutional violation in circumstances that remotely resemble what the defendant officers encountered in this case. *See* ECF No. 38 at 11. As to Officer Peralta, Blair cites one circuit case, which concluded officers were plausibly alleged to have used excessive force when they used a baton against some plaintiffs "unprovoked and without warning" and other plaintiffs "even though they had complied" with the officers' orders. *Rudder v. Williams*, 666 F.3d 790, 795 (D.C. Cir. 2012). He cites another case in which the court found a reasonable jury could conclude that an officer used excessive force by repeatedly hitting in the head a plaintiff who was "pinned to the ground in a prone position for over half a minute and attempting to cooperate with the Officers' attempts to handcuff him," where the officers "had no reason to believe that [the plaintiff] was armed," and the plaintiff "never attempted to strike the Officers at any point during the encounter." *Williams v. District of Columbia*, 268 F. Supp. 3d 178, 190–91 (D.D.C. 2017). And he cites a third case where an officer used excessive force by using "unprovoked, violent force" against a person who "was handcuffed and already in police custody" and therefore "largely defenseless." *Mazloum v. D.C. Metro. Police Dep't*, 576 F. Supp. 2d 25, 39 (D.D.C. 2008). As to Officer Smith, Blair cites *Williams* again and one additional case in which the court found an officer's use of a chokehold "was objectively unreasonable" where "[t]hree officers had effectively pinned [the plaintiff] to the ground and gained control of his arms" and an officer "maintain[ed] a chokehold on [the plaintiff] after he had been subdued." *Ingram v. Shipman-Meyer*, 241 F. Supp. 3d 124, 141–42 (D.D.C. 2017).

None of Blair's cases involved officers trying to quell a violent protest, and none involved a circumstance in which the plaintiff actively disobeyed, provoked, and aggressively hit police officers. This case involves both. Even viewing the evidence in Blair's favor, the defendant officers used force in the context of attempting to disperse a large crowd following a violent attack on the

8

Capitol, and Blair actively disobeyed officers and aggressively cross-checked an officer with a lacrosse stick. And the rapidly unfolding events, during which officers used batons within seconds of Blair striking one of them and struggling with officers, do not resemble the use of force against someone who did not provoke the officers and was complying with their orders, *Rudder*, 666 F.3d at 795, "pinned to the ground in a prone position for over half a minute and attempting to cooperate," *Williams*, 268 F. Supp. 3d at 190, already handcuffed, *Mazloum*, 576 F. Supp. 2d at 39, or pinned to the ground by three officers and held in a chokehold, *Ingram*, 241 F. Supp. 3d at 141–42. And in cases similar to this one, courts concluded that the defendant officers were entitled to qualified immunity. *See Fischer v. District of Columbia*, No. 24-cv-00044, 2025 WL 894445, at *11 (D.D.C. Mar. 24, 2025) (finding defendant officers were "entitled to qualified immunity" on excessive force claim given the "unprecedented circumstances surrounding the violent encroachment of the U.S. Capitol" and the plaintiff's failure to demonstrate "that every reasonable official would have understood the MPD officers' conduct to violate the Fourth Amendment" (cleaned up)); *White v. Bagshaw*, No. 24-cv-00018, 2026 WL 707358, at *4–5 (D.D.C. Mar. 13, 2026) (concluding that officers were "entitled to qualified immunity on [the plaintiff's] excessive force claim" where the plaintiff was "an active participant in an unprecedented riot at the Capitol" and "officers wielded deadly force against her by repeatedly striking her in the head" because the plaintiff "failed to identify any precedent that squarely governs" under those circumstances (cleaned up)).[4]

---

[4]    Blair's constitutional claim for excessive force also includes one sentence asserting "Plaintiff was also exercising his First Amendment right of freedom of assembly, petition the government, and speech, and those rights were abridged as well." ECF No. 11 ¶ 22. To the extent Blair asserts a First Amendment claim, he has neither alleged nor adduced evidence of any facts that separate it from his excessive force claim. Blair also fails to respond to the defendants' arguments that they are entitled to summary judgment as to any First Amendment claim, and he does not identify any

The court therefore concludes the defendant officers are entitled to qualified immunity. The court declines to exercise supplemental jurisdiction over Blair's D.C. law claims for assault and battery against the officers and for negligent training and supervision against the District. Those claims shall be remanded forthwith to D.C. Superior Court so that Blair may pursue them there. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31–32 (2025) (recognizing that once a court has "dismissed all claims over which it has original jurisdiction," it "ordinarily should" remand the case (quoting 28 U.S.C. § 1367(c)(3))).

## III.    Conclusion

For these reasons, the court grants summary judgment to Officers Peralta and Smith as to Blair's federal claims, denies Blair's motion for summary judgment, and remands Blair's D.C. law claims to the D.C. Superior Court. A separate order accompanies this memorandum opinion.

_____

AMIR H. ALI
United States District Judge

Date:    July 21, 2026

---

First Amendment precedent whatsoever in his briefing, let alone caselaw that clearly established a violation in the circumstances here. The officers are thus entitled to qualified immunity on Blair's First Amendment claim. *See Fischer*, 2025 WL 894445, at \*10 ("Without a prior case placing the MPD officers' conduct 'beyond debate,' they are entitled to qualified immunity on [the plaintiff's] First Amendment claims against them." (quoting *Wesby*, 583 U.S. at 63)); *Lash v. Lemke*, 971 F. Supp. 2d 85, 98 (D.D.C. 2013) (concluding defendants were entitled to qualified immunity on plaintiff's First Amendment claim "that he was subjected to excessive force as retaliation for his exercise of his First Amendment rights" because he "was not subjected to excessive force in the course of his arrest").